IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TODD MCCARTNEY** and **CENTURION LEASING, LLC**,<br><br>        Plaintiffs,<br><br>v.<br><br>**MALINKA CPA, LLC** and **PETER MALINKA**,<br><br>        Defendants. | Case No. 3:22-cv-01322-IM<br><br>**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

Darian A. Stanford, Tonkon Torp LLP, 888 S.W. Fifth Avenue, Suite 1600, Portland, OR 97204. Peter Kessler, Kutak Rock LLP, Two Logan Square, 100 N. 18th St., Suite 1920, Philadelphia, PA 19103. Attorneys for Plaintiffs.

Adam Reed Knecht, Lex Tecnica LTD, 10161 Park Run Drive, Suite 150, Las Vegas, NV 89145. Pilar C. French, Lane Powell, PC, 601 S.W. Second Avenue, Suite 2100, Portland, OR 97204. Attorneys for Defendants.

**IMMERGUT, District Judge.**

      Plaintiffs Todd McCartney and Centurion Leasing, LLC (collectively "Plaintiffs") filed a complaint against Defendants Malinka CPA, LLC and Peter Malinka (collectively "Defendants") on September 2, 2022, alleging two claims arising out of Defendants' tax preparation services and advice. ECF 1. Defendants filed a Motion to Dismiss Plaintiffs' complaint in its entirety on

PAGE 1 – OPINION AND ORDER

November 7, 2022. ECF 12. Plaintiffs filed a response on November 21, 2022, ECF 13, and Defendants filed a reply on December 5, 2022, ECF 14. This Court held a hearing and heard argument on Defendants' motion on June 14, 2023, and for the reasons stated on the record, this Court DENIED Defendants' motion. ECF 20. The following Opinion and Order addresses the motion in more detail.

Before this Court is Defendants' Motion to Dismiss. ECF 12. Defendants move to dismiss Plaintiffs' complaint on the following grounds: (1) lack of personal jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(2); (2) failure to state a breach of contract claim under FRCP 12(b)(6); (3) improper venue under FRCP 12(b)(3); (4) failure to state a breach of the covenant of good faith and fair dealing claim under FRCP 12(b)(6); (5) failure to plead with particularity under FRCP 9(b); and (6) failure to bring a timely claim under Oregon Revised Statute ("O.R.S.") 12.110(1). *Id.* at 1–2.

For the following reasons, this Court DENIES Defendants' Motion to Dismiss.

## BACKGROUND[1]

### A. The Parties

Plaintiff Todd McCartney ("Plaintiff McCartney") is a resident of Florida who resided in Oregon at the time of the events giving rise to this litigation. ECF 1 at ¶ 3. Plaintiff Centurion Leasing, LLC ("Plaintiff Centurion") is an LLC with Florida citizenship based in Oregon. *Id.* at ¶ 4. Its sole member is Plaintiff McCartney. *Id.* Defendant Malinka CPA, LLC is a Utah LLC whose members all possess Utah citizenship. *Id.* at ¶ 5. Defendant Peter Malinka is a resident of

---

[1] The following factual allegations are taken from Plaintiffs' Complaint. ECF 1.

Utah. *Id.* at ¶ 6. Plaintiffs contracted with Defendants Peter Malinka and Malinka CPA for tax preparation services. *Id.* at ¶ 9.

**B. The Agreements**

Plaintiffs and Defendants entered into a number of agreements related to Defendants' provision of tax preparation services. Each agreement was memorialized in an engagement letter addressed to Plaintiff McCartney. *Id.* at ¶¶ 10, 12, 14, 16. On or around March 1, 2015, Plaintiff McCartney entered into an agreement for the preparation of his 2015 tax return ("Agreement A"). *Id.* at ¶ 10. Agreement A was memorialized in engagement letters dated March 1, 2015 and March 1, 2016. *Id.*; ECF 1-1. This agreement included the following provision ("more likely than not provision"):

> We must use our judgment in resolving questions where the tax law is unclear, or where there may be conflicts between the taxing authorities' interpretations of the law and other supportable positions. We will apply the "more likely than not" reliance standard to resolve such issues in order to avoid penalties that might be assessed against us as return preparers. You agree to honor our decisions regarding disclosure of return positions to avoid or mitigate penalties.

ECF 1 at ¶ 11.

On or around March 3, 2018, Plaintiff McCartney entered an agreement with Defendants for the preparation of his 2017 tax return ("Agreement B"). *Id.* at ¶ 12; ECF 1-2. This agreement also contained the more likely than not provision outlined above. ECF 1 at ¶ 13. At an unspecified time, Plaintiff McCartney entered into another agreement with Defendants for the preparation of Plaintiff Centurion's combined financial statements for the years 2014, 2015, and 2016 ("Agreement C"). *Id.* at ¶ 14; ECF 1-3. This agreement contained the following provision ("professional standards provision"):

> We will conduct our compilation engagement in accordance with the Statements on Standards for Accounting and Review Services (SSARS) promulgated by the Accounting and Review Services Committee of the AICPA and comply with applicable professional standards, including the AICPA's Code of Professional Conduct, and its ethical principles

PAGE 3 – OPINION AND ORDER

of integrity, objectivity, professional competence, and due care, when preparing the combined financial statements, and performing the compilation engagement.

ECF 1 at ¶ 15. Finally, on or about March 3, 2018, Plaintiff McCartney entered into an agreement with Defendants for the preparation of Plaintiff Centurion's 2017 tax return ("Agreement D"). *Id.* at ¶ 16; ECF 1-4. This agreement also contained the more likely than not provision outlined above. ECF 1 at ¶ 17.

**C. The Flight Simulator Investment**

Plaintiffs allege that prior to December 31, 2016, Defendants recommended an unsuitable investment to Plaintiff McCartney. *Id.* at ¶ 1. To reduce Plaintiffs' taxes, Defendants advised purchasing an AirBus A320-232 FFS FAA Level D Full Flight Simulator ("flight simulator") from SEF SIM795-2, LLC, which Plaintiff Centurion would then lease. *Id.* at ¶¶ 19, 22. Defendants allegedly touted the investment as "having significant tax benefits" and as being "a fundamentally tax driven investment." *Id.* at ¶ 25. Defendants told Plaintiff McCartney not to "pay the taxes he actually owed" and assured Plaintiff McCartney that he would receive a $400,000 credit. *Id.* at ¶ 35. Relying on Defendants' recommendation, Plaintiff Centurion purchased the flight simulator on December 31, 2016. *Id.* at ¶ 24.

Plaintiffs further allege that Defendants intentionally mischaracterized this investment on Plaintiffs' tax returns, which triggered audits as well as professional fees and penalties. *Id.* at ¶ 1. Defendants characterized the rental of this flight simulator as an "active" activity on Plaintiffs' tax returns. *Id.* at ¶ 27. Because rentals are allegedly passive by definition, the investment was mischaracterized on the tax returns, which created "a loss that was not supported under the tax code." *Id.* at ¶¶ 29–30. Plaintiffs allege that Defendants knew that they would have to characterize that investment in a manner that was not supported by the tax code in order for Plaintiffs to receive tax benefits, *id.* at ¶ 26.

Plaintiffs allege that in making this unsupported characterization, Defendants offset Plaintiff McCartney's active income against that passive (but wrongly characterized as active) loss. *Id.* at ¶ 31. The erroneous characterization of the flight simulator investment triggered several audits against Plaintiffs for the tax years 2015, 2016, 2017, and 2018. *Id.* at ¶ 32. As a result of the audits, Plaintiffs have paid significant fees, interest, and penalties—including fees paid to Defendants to handle aspects of these audits. *Id.* at ¶¶ 33–34. For example, Plaintiffs allegedly received a bill totaling over one million dollars. *Id.* at ¶ 36. Plaintiffs have settled both the 2015 and 2016 audits, which necessitated paying one million dollars to the Internal Revenue Service ("IRS") from the sale of Plaintiff McCartney's house. *Id.* at ¶¶ 38–39.

## DISCUSSION

On September 2, 2022, Plaintiffs filed a complaint alleging claims for breach of contract and breach of the covenant of good faith and fair dealing against Defendants. ECF 1. Defendants move to dismiss Plaintiffs' complaint based on: (1) lack of personal jurisdiction under Federal Rule of Civil Procedure ("FRCP") 12(b)(2); (2) improper venue under FRCP 12(b)(3); (3) failure to state a claim upon which relief may be granted under FRCP 12(b)(6); and (4) failure to plead with particularity under FRCP 9(b). ECF 12 at 1–2. This Court will address each ground for dismissal in turn.

### A. This Court May Exercise Personal Jurisdiction over Defendants

Defendants move to dismiss Plaintiffs' claims by arguing that this Court lacks both general and specific jurisdiction over Defendants. However, this Court finds that it may exercise specific jurisdiction over Defendants.

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted). "Where, as here, a

PAGE 5 – OPINION AND ORDER

defendant's motion to dismiss is based on a written record and no evidentiary hearing is held, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation omitted). Uncontroverted allegations in the complaint must be taken as true. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). However, a court need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See Boschetto*, 539 F.3d at 1015. Oregon's long-arm statute is co-extensive with federal due process standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4(L)); *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); *Wallace v. Holden*, 297 Or. App. 824, 834, 445 P.3d 914 (Or. 2019) (personal jurisdiction under Oregon law must comport with federal due process). Accordingly, the jurisdictional analyses under Oregon state law and federal due process are the same. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

A federal court's exercise of personal jurisdiction comports with federal due process where a defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). From this general principle, courts have recognized two distinct categories of personal jurisdiction: general, or "all-purpose" jurisdiction, and specific, or "case-linked" jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A court can exercise specific jurisdiction over a defendant where the "defendant's

PAGE 6 – OPINION AND ORDER

suit-related conduct [] create[s] a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

In analyzing specific jurisdiction, the Ninth Circuit uses a three-part test to evaluate whether a defendant has sufficient "minimum contacts" with the forum state to comport with due process:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff "bears the burden of satisfying the first two prongs." *CollegeSource*, 653 F.3d at 1076. If the plaintiff does so, the burden shifts to the defendant at prong three "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Because Oregon's long-arm statute, Or. R. Civ. P. 4(L), is coextensive with federal due process requirements, this Court need only determine whether the exercise of jurisdiction over Defendants "comports with the limits imposed by federal due process" under the Ninth Circuit's specific jurisdiction test. *Gray & Co.*, 913 F.2d at 760 (citing Or. R. Civ. P. 4(L)); *Ranza*, 793 F.3d at 1068 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)).

### 1. Purposeful Availment

The first prong of the Ninth Circuit's specific jurisdiction analysis refers to both purposeful direction and purposeful availment. In addressing this prong, the parties analyze personal jurisdiction under the purposeful availment test. ECF 12 at 7; ECF 13 at 3. Under this test, courts examine whether the defendant "deliberately engaged in significant activities within a

PAGE 7 – OPINION AND ORDER

State" or "has created continuing obligations between himself and residents of the forum" such that he "has availed himself of the privilege of conducting business there." *Burger King Corp.*, 471 U.S. at 476.

Defendants maintain that this Court lacks specific jurisdiction over Defendants because they have not created a "substantial connection" with the forum state of Oregon. ECF 12 at 8; *see also Burger King Corp.*, 471 U.S. at 475. This Court disagrees.

In evaluating purposeful availment, this Court finds the Ninth Circuit's analysis in *Hylwa, M.D., Inc. v. Palka* instructive. 823 F.2d 310, 313–14 (9th Cir. 1987). In *Hylwa*, the Ninth Circuit addressed whether a California district court could exercise personal jurisdiction over the defendant, a Kansas accountant who had been hired by the plaintiff to perform services for the plaintiff's Kansas medical practice. *Id.* at 312. Prior to the suit, the plaintiff had moved to California and established a new medical practice under a California corporation. *Id.* After the plaintiff's relocation, the defendant continued providing accounting services to the new practice and occasionally travelled to California for this purpose. *Id.* The Ninth Circuit found purposeful availment based on these facts, noting that the defendant's rare *physical* contact with the forum did not defeat jurisdiction. *Id.* at 314. The Ninth Circuit also maintained that the California court could exercise personal jurisdiction over the defendant even though he was originally hired to work in Kansas and his contact with California was created by his client's unilateral decision to move there. *Id.* at 314–15. The *Hylwa* court reasoned that the defendant could reasonably control his own vulnerability to suit and continued to provide accounting services after the plaintiff's relocation due to his "desire to benefit from the contractual relationship." *Id.* at 314.

Applying similar reasoning, this Court finds that Defendants created a "substantial connection" with Oregon by offering tax preparation and financial statement services to a then-

PAGE 8 – OPINION AND ORDER

Oregon LLC and a then-Oregon resident. ECF 1 at ¶¶ 3, 4, 9, 14, 16. For example, Defendants' services specifically included "prepar[ing] . . . state income tax returns with supporting schedules." ECF 1-1 at 7; *see also* ECF 1-1 at 4; ECF 1-2 at 1; ECF 1-4 at 1. Additionally, this Court finds that Defendants similarly controlled their vulnerability to suit and provided services to Plaintiffs due to their desire to benefit from the contractual relationship. Ultimately, this Court finds that offering state-specific services to a then-Oregon LLC and a then-Oregon resident qualifies as purposeful availment sufficient to satisfy the first prong of the Ninth Circuit's specific jurisdiction test. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (finding purposeful availment where defendant had limited physical contact with forum but maintained ongoing obligations to residents and occasionally solicited new business from them); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397–1400 (9th Cir. 1986) (finding purposeful availment where defendant had no physical contact with forum, but insured forum residents).

Accordingly, this Court finds that Plaintiffs have pleaded sufficient facts to satisfy the purposeful availment test, thereby fulfilling the first prong of the Ninth Circuit's specific jurisdiction test.

### 2. Claims Arising Out of or Relating to Defendants' Forum-Related Activities

The second prong of the Ninth Circuit's specific jurisdiction test requires that the claim arise out of or relate to the defendant's forum-related activities. *CollegeSource, Inc.*, 653 F.3d at 1076 (quoting *Schwarzenegger*, 374 F.3d at 802). Addressing the second prong, this Court finds that Plaintiffs' claims arise out of Defendants' forum-related activities—namely, Defendants' provision of tax preparation services to Plaintiffs. *See* ECF 1 at ¶¶ 44, 53–58, 61, 70–77. Plaintiffs characterize Defendants' flight simulator recommendation and subsequent tax return mischaracterization as the relevant breach in both their breach of contract and breach of the

PAGE 9 – OPINION AND ORDER

covenant of good faith and fair dealing claims. *Id.* at ¶¶ 1–2. As such, this Court finds that Plaintiffs' claims arise out of or relate to Defendants' forum-related activities. *See, e.g.*, *Dole Food Co. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) (finding that it is "obvious" that plaintiff's claims arise out of defendant's contacts with forum where "contacts between [defendants] and the forum state are integral and essential parts of the alleged . . . scheme on which [plaintiff] bases its suit").

### 3. Reasonable Exercise of Jurisdiction

The third prong of the Ninth Circuit's specific jurisdiction test requires that the exercise of jurisdiction be reasonable. *CollegeSource, Inc.*, 653 F.3d at 1076 (quoting *Schwarzenegger*, 374 F.3d at 802). The burden shifts to the defendant at this prong "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476–78). To evaluate reasonableness, courts in the Ninth Circuit use a seven-factor balancing test that weighs:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018) (citation omitted).

This Court concludes that Defendants have not presented a compelling case that this Court's exercise of jurisdiction over Plaintiffs' claims would be unreasonable. For example, Defendants do not contend that they will suffer financial hardship or will be unduly burdened by travelling to Oregon in relation to this case, much less that the "inconvenience is so great as to constitute a deprivation of due process." *Id.* at 608. Moreover, Defendants fail to highlight any

potential conflicts with the sovereignty of Utah. Finally, as Plaintiffs rightly contend, Oregon has a "significant interest in adjudicating a dispute involving services provided by out-of-state professionals to its former resident, concerning tax returns filed in its state – federally, for Oregon itself, and for its municipalities." ECF 13 at 6; *cf. Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). This Court finds that Defendants have failed to carry their burden on this element and that it may exercise specific jurisdiction over Defendants.

Because Plaintiffs have pleaded sufficient facts to fulfill the Ninth Circuit's specific jurisdiction test, this Court finds that it may exercise specific jurisdiction over Defendants. Accordingly, this Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction.[2]

## B. The District of Oregon is a Proper Venue

Defendants also move to dismiss based on improper venue. Once a defendant has moved to dismiss for improper venue under FRCP 12(b)(3), the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The general federal venue statute, 28 U.S.C. § 1391, "govern[s] the venue of all civil actions brought in district courts of the United States." Section 1391(b) provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that

---

[2] Defendants also assert that this Court lacks specific jurisdiction over Defendant Peter Malinka because he is not party to any of the agreements cited by Plaintiffs in their Complaint. ECF 12 at 7. However, as shown in Plaintiffs' attached exhibits, Peter Malinka signed each of the agreements underlying Plaintiffs' claims. ECF 1-1 at 3, 6, 9; ECF 1-2 at 3; ECF 1-3 at 4; ECF 1-4 at 3. In addition, Agreement C states that "Peter Malinka is the engagement partner and is responsible for supervising the engagement." ECF 1-3 at 4. Accordingly, this Court finds it may exercise specific jurisdiction over Defendant Peter Malinka at this stage. *See Picot*, 780 F.3d at 1211.

PAGE 11 – OPINION AND ORDER

>is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

This Court first finds that the District of Oregon is a proper venue under Section 1391(b)(3) because this Court may exercise personal jurisdiction over Defendants. In addition, this Court finds that Plaintiffs have sufficiently alleged that a substantial part of the events giving rise to Plaintiffs' claims occurred in Oregon under Section 1391(b)(2). The Ninth Circuit has held that a substantial part of the events giving rise to the relevant claims occurs at the locus of the plaintiff's injury or in the forum where "at least one of the 'harms' suffered by [the p]laintiff[] . . . was felt." *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075–76 (9th Cir. 2001). In Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims, Plaintiffs allege harm based on Defendants' tax investment recommendation and subsequent characterization of that investment on Plaintiffs' tax returns. Because Plaintiffs were an Oregon resident and an Oregon LLC at the time the conduct occurred, this Court finds that the locus of Plaintiffs' injury resulting from Defendants' alleged misconduct is in Oregon. Therefore, venue is also proper under 1391(b)(2).

Accordingly, this Court DENIES Defendants' motion to dismiss for improper venue.

## C. Plaintiffs Have Plausibly Alleged Their Claims

Defendants move to dismiss Plaintiffs' claims for failure to state a claim on two grounds. First, Defendants argue that Plaintiffs have failed to plausibly allege the elements of breach of contract and breach of the covenant of good faith and fair dealing. ECF 12 at 17–21. Second, Defendants maintain that Plaintiffs' claims are barred by Oregon's two-year statute of limitations. *Id.* at 22–24. This Court finds that Plaintiffs have plausibly alleged breach of contract

and breach of the covenant of good faith and fair dealing claims. This Court also finds that Oregon's two-year statute of limitations does not apply to Plaintiffs' claims.

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Iqbal*, 556 U.S. at 678–79.

1. **Breach of Contract**

Defendants move to dismiss Plaintiffs' breach of contract claim, arguing that Plaintiffs have failed to state a claim for which relief may be granted.[3] This Court finds that Plaintiffs have sufficiently alleged the elements of a breach of contract claim. Under Oregon law, a plaintiff establishes a breach of contract claim by alleging "the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damage to plaintiff." *Slover v. Oregon State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (Or. App. 1996) (internal quotation marks and citations omitted); *see also Hansen v. Gov't Emps. Ins. Co.*, 771 F. App'x 385, 386 (9th Cir. 2019) (quoting *Slover*, 144 Or. App. at 570). Plaintiffs allege the following elements: (1) the existence of four relevant tax preparation services contracts between

---

[3] Defendants initially allege that Plaintiffs' complaint fails to state a breach of contract claim against Defendant Peter Malinka because he is not a party to any of the agreements referenced in the complaint. ECF 12 at 17. However, as stated above, this Court finds that Plaintiffs have sufficiently alleged that Defendant Peter Malinka was a party to the relevant agreements, as he was the signatory for each of the relevant agreements. *See* ECF 1-1 at 3, 6, 9; ECF 1-2 at 3; ECF 1-3 at 4; ECF 1-4 at 3.

PAGE 13 – OPINION AND ORDER

Plaintiffs and Defendants, ECF 1 at ¶¶ 45, 47, 49, 51; (2) relevant contract terms, *id.* at ¶¶ 46, 48, 50, 52; (3) Defendants' breach, *id.* at ¶¶ 1–2, 30, 53–54, 58, 75; and (4) resulting damage to Plaintiffs, *id.* at ¶ 55; *see also id.* at ¶ 57. Accordingly, this Court finds that Plaintiffs have sufficiently alleged a breach of contract claim.

### 2. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs allege that Defendants breached the implied covenant of good faith and fair dealing by recommending the flight simulator investment and mischaracterizing this investment on Plaintiffs' tax returns. ECF 1 at ¶¶ 71, 72, 75. Defendants move to dismiss this claim for failure to state a claim. ECF 13 at 20–21.

Under Oregon law, every contract contains an implied duty of good faith and fair dealing. *Klamath Off–Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445 (Or. App. 2010). The duty of good faith and fair dealing "serves to effectuate the objectively reasonable expectations of the parties," *Hampton Tree Farms, Inc. v. Jewett*, 320 Or. 599, 615 (Or. 1995), and bars "improper behavior in the performance and enforcement of contracts . . . to ensure that the parties 'will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract,'" *Klamath Off-Project Water Users*, 237 Or. App. at 445 (quoting *Iron Horse Eng'g v. Nw. Rubber*, 193 Or. App. 402, 421 (Or. App. 2004)). "[A] party may violate its duty of good faith and fair dealing without also breaching the express provisions of a contract." *Id.* (internal quotation marks omitted).

Defendants assert that Plaintiffs cannot allege an expectation that the flight simulator investment would be properly characterized on Plaintiffs' tax returns because the operative agreements imply "that there would only be a 51% chance that Defendants' characterization would be correct." ECF 12 at 21. This Court disagrees. The relevant agreements explicitly state that Defendants' characterization of the investment would be "more likely than not" correct. *See,*

PAGE 14 – OPINION AND ORDER

*e.g.*, ECF 1-1 at 5, 7. This provision serves as the foundation for Plaintiffs' expectation that Defendants would recommend beneficial investments and characterize these investments correctly on Plaintiffs' tax returns. This Court finds that Plaintiffs have sufficiently alleged a breach of the covenant of good faith and fair dealing claim.

### 3. Statute of Limitations

Finally, Defendants move to dismiss Plaintiffs' claims by arguing that they are untimely under Oregon's two-year statute of limitations. If a claim's accrual under the applicable statute is apparent on the face of a plaintiff's complaint, a defendant may raise a statute of limitations defense on a motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Defendants allege that O.R.S. 12.110(1) applies to Plaintiffs' claims. This provision states:

> An action for assault, battery, false imprisonment, or for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years; provided, that in an action at law based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit.

O.R.S. 12.110(1). However, this provision does not apply to claims "arising on contract." *Id.* As Defendants acknowledge, if Plaintiffs' complaint sounds in contract, the applicable statute of limitations under Oregon law is six years. ECF 12 at 22; *see* O.R.S. 12.080 ("An action upon a contract . . . shall be commenced within six years."). This Court finds that Plaintiffs' complaint sounds in contract—as Plaintiffs allege both breach of contract and breach of the covenant of good faith and fair dealing claims—and that Oregon's two-year statute of limitations does not apply to Plaintiffs' complaint. This Court declines to find Plaintiffs' claims untimely at this stage.

Accordingly, this Court DENIES Defendants' motion to dismiss for failure to state a claim.

PAGE 15 – OPINION AND ORDER

**D. Defendants Have Not Established that FRCP 9(b) Applies to Plaintiffs' Claims**

Defendants move to dismiss for failure to plead fraud with particularity, asserting that Plaintiffs have failed to properly plead facts under FRCP 9(b). Federal Rule of Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Even if fraud is not a necessary element of a claim, Rule 9(b) applies where the claim is "grounded in fraud" or "sound[s] in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d at 1097, 1103–04 (9th Cir. 2003). Defendants assert that Plaintiffs make allegations sounding in fraud, deceit, and misrepresentation without specifically bringing a fraud claim, such that FRCP 9(b) applies to relevant allegations in Plaintiffs' complaint. ECF 12 at 21. However, Defendants have failed to proffer any authority for dismissing a breach of contract or breach of the covenant of good faith and fair dealing claim under FRCP 9(b)'s particularity requirements. Absent such authority, this Court declines to apply FRCP 9(b)'s requirements to Plaintiffs' claims. This Court DENIES Defendants' motion to dismiss for failure to plead with particularity.

Accordingly, this Court DENIES Defendants' motion to dismiss on all grounds.

## CONCLUSION

For the reasons stated above, this Court DENIES Defendants' Motion to Dismiss, ECF 12.

**IT IS SO ORDERED**.

DATED this 22nd day of June, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge